### BEACH and others vs. CHILD.

Where three *tenants in common* constructed a *basin* communicating with a *public canal*, and laid out *six lots* of the width of 35 feet each, facing upon one side of the basin, dividing the lots between them by each taking two, and giving to each proprietor the privilege of erecting warehouses upon his lots, extending the same to the basin; and the *grantee* of one of the original proprietors built a pier in the basin in front of his lot, on the line between it and the lot of a *grantee* of another original proprietor, whereby the latter was obstructed in the convenient use of the waters of the basin, i. e. in the lading and unlading of canal boats and in their free passage to and from his wharf; *it was held*, the owner of each lot was entitled to the use of the waters of the basin, by laying a canal boat in front of his own lot, extending over in front of his neighbor's lot, when such neighbor was not occupying the basin in front of his own lot in its *appropriate use* and that for a *permanent obstruction* in such use of the waters of the basin, by the erection of a pier, an *action on the case* might be sustained.

THIS was an *action on the case*, tried at the Monroe circuit in October, 1831, before the HON. ADDISON GARDINER, one of the circuit judges.

The jury found a *special verdict*, setting forth the following facts: In 1811, Charles Carroll, Nathaniel Rochester and William Fitzhugh became the owners of about 100 acres of land, lying adjacent to the great falls on the Genesee river, and now included within the bounds of the *city of Rochester*. In August, 1817, they made partition of the tract, which was remoddled in 1822, when, among other things, they agreed to excavate or form a *basin* upon a portion of the 100 acres, to be connected with the Erie canal, and to new-arrange certain *mill site lots*, so as to form *seven lots* fronting upon the basin, and upon an aqueduct connecting it with the Erie canal, numbering the lots 3, 4, 5, 6, 7, 8, 9. The lots were 31 feet wide and 60 feet deep, with spaces between them of 4 feet, for light. Lots Nos. 3 and 4 were assigned as the share of Fitz-

hugh, 5 and 6 as the share of Rochester, and 7, 8 and 9 as the share of Carroll; and they accordingly, on the 19th September, 1822, executed a *partition deed,* releasing to each other the lots as above specified.   In the deed was contained an agreement for the making of the basin above referred to, at the *joint expense* of the parties to the deed; "which basin," it was declared, "shall be the *common property* of the parties to this indenture, their heirs and assigns *forever.*" In front of the lots, i. e. between the lots and the basin, there was appropriated a space of ground called a *common way,* over which the parties were severally authorized by the deed of partition to erect warehouses, extending from their lots to the basin, leaving a passage beneath them adjoining the basin of a certain height and width, so as not to obstruct the free passage upon the *common way* or road. In 1823, the *basin* was completed, and in the same year the Erie canal was finished at Rochester. On the 1st May, 1823, Charles Carroll, one of the parties to the partition deed, for the consideration of $2050, conveyed lot No. *seven* to *Thomas Kempshall,* describing it as *thirty-five feet* in width, and granting the privilege of taking water from a race-way running in front of the lots 3, 4, 5, 6, 7, 8, and of extending buildings *on posts* to the edge of the basin, alleged to be then making by Charles Carroll, William Fitzhugh and Nathaniel Rochester, " together with the same privilege of *wharfage,* of *loading* and *unloading* boats, on said thirty-five feet, that the said Charles is entitled to by said deed;" (meaning the partition deed of 19th September, 1822;) " said Kempshall not to bear any part of the expense of making said basin, but to be at the same expense of keeping it in repair that the said Charles would have been liable to for the said mill site." " It being hereby intended to convey the said *mill site* number *seven* with the *same privileges* and immunities, and subject to the same limitations and restrictions, and expenses of repairing the works, that the said Charles would have been entitled to enjoy, and liable to incur by the above mentioned deed." On the 11th January, 1828, *Kempshall* conveyed *five-eighths* of the premises last mentioned to E. S. Beach & H. Kennedy, together with the same privileges and subject to the same restrictions contained in the deed from Carroll to him;

ALBANY,
Jan. 1835.

Beach
v.
Child.

and in the same year Kempshall, Beach & Kennedy, erected a flouring mill on mill sites Nos. 7, 8, 9 and 10, at an expense of $50,000, and constructed a warehouse *over the road in front of lot No. seven,* extending to the canal basin, of the same width as lot number seven, and projecting over the *east* wall of the basin about six feet, so that by means of machinery and an elevator, they were enabled to take wheat out of boats lying in the canal. The canal boats are 70 feet long, and to enable Kempshall, Beach & Kennedy to take the wheat from a boat most commodiously, and with the least loss of time, the boat should so lie in the basin that its middle should be opposite to the centre of the warehouse, and under the elevator ; but to place a boat in such a situation, one end of it must necessarily be in front of lot number *six,* and the other end in front of lot number *eight ;* and when the boat was shoved still farther north, so as to take the wheat from the stern, it would cover the whole front of No. *six.* On the first of October, 1830, the *defendant* in this cause, who was the owner of lot No. *six,* put down a pier of timber and stone *in the basin,* in front of his lot No. *six,* on the line between it and lot No. *seven,* which pier extended from the shore into the basin 12 feet, and was of the width of six feet, and effectually prevented boats lying at No. *seven,* from occupying any portion of the wharf in front of No. *six,* whilst unloading, or from shoving forward in front of No. *six* to get out, after they had unloaded. The pier was continued about six months, when it was removed by an arrangement between the parties ; this suit, however, which was commenced before, was continued to try the right. On the part of the defendant it was shown, that in October, 1822, he became invested with the title of *Nathaniel Rochester,* to all the premises covered by the *seven mill site lots* and by the *basin.* On the 10th December, 1823, the *executor* of *Charles Carroll* conveyed to the *defendant* and to William Fitzhugh all the right, title and interest of the testator to the *basin,* the grounds forming the same, and the wharves adjoining it except the wharfage of lots Nos. 7 and 8, and the privileges appertaining to those lots ; and on the 30th May, 1825, the same executor conveyed to the defend-

ant and to William Fitzhugh lots Nos. 8 and 9, together with all the privileges of water which by the partition deed of 19th September, 1822, were allotted to mill sites Nos. 7, 8 and 9, *except what had been previously sold and conveyed by the testator to Thomas Kempshall.* Those lots, Nos. 8 and 9, were subsequently, to wit, in December, 1826, conveyed by the defendant and Fitzhugh to Kempshall, Beach & Kennedy, the plaintiffs in this case. The jurors further find, that from the north line of mill lot No. 7, to the south line of the basin, which is a distance of 90 feet, and embraces the whole front of lots Nos. 7, 8 and 9, there is no obstruction whatever to a boat lying along the east wall of the basin. The jurors say that if the court shall be of opinion that the defendant is guilty of *unlawfully obstructing the plaintiffs in the use of the waters of the basin, by preventing them from laying their canal boats in front of lot No. 6, for the purpose of loading and unloading at No. seven,* then they assess the plaintiffs' damages at $100 ; and if the court be of opinion that the obstruction consists only in preventing the plaintiffs from the use of the the waters of the basin *in front of No. six, by obstructing the free passage of a boat after being loaded or unloaded at No. 7,* then they assess the plaintiffs' damages at *one dollar;* but if, &c. they say the defendant is not guilty.

*J. C. Spencer,* for the plaintiffs.

*D. D. Barnard,* for the defendant.

*By the Court,* NELSON, J. All the rights and privileges to the use of the basin, possessed by Charles Carroll, under the deed of partition bearing date the 19th September, 1822, and which he would have been entitled to enjoy in the occupation of mill site No. 7, for its benefit and convenience as such, he conveyed to Kempshall, by his deed of 21st May, 1823, in terms too special and explicit to be misunderstood. After describing the privileges granted and restrictions imposed, he adds : " It being hereby intended to convey the said mill site number seven, with the same privileges and immunities, and subject to the same limitations and restrictions, and expenses·

of repairing the works, that the said Charles would have been entitled to enjoy, and liable to incur by the above mentioned deed," (meaning the partition deed.) The question presented in the special verdict is to be decided as if it had arisen between Carroll in the occupation of the mill on this lot and his co-tenants under the partition deed, and in truth involves, simply, a construction of that instrument. Though the defendant is one of his co-assignees of the basin, and of all the rights belonging thereto, under a deed of the executor of the 19th December, 1823, yet that conveyance must be taken subject to the rights previously granted to Kempshall, and it in no way varies the case. The basin was made upon land belonging in common to the parties; and it was agreed in the partition deed of 1822, to be made at their joint expense, and to be the common property of the parties to the deed of partition, their heirs and assigns forever. The deed also provides for the building, by each, of warehouses in front of his respective mill sites across a common way, the extent of his lots to the margin of the basin, which was obviously constructed for the special convenience and accommodation of the many valuable mill sites belonging to the parties in that neighborhood, while at the same time it afforded facilities to other branches of business, thereby benefitting their other lots, besides creating a revenue from anchorage, wharfage, &c.

There is nothing in the deed of partition expressly regulating or restricting the use of their common interest, and it is left, therefore, to the operation of law. Being tenants in common, they are possessed *per my et per tout,* and upon strict principles applicable to this estate, each is entitled to the use and enjoyment of every part of the basin—one part as much as another. 2 *Black. Comm.* 194. Looking at the subject, however, with regard to the division of the mill lots, and that the basin was constructed in part, at least for the benefit and accommodation of those lots, this general right of each, legally flowing from the nature of the estate, should be deemed so far qualified by the deed of partition, by implication of law, as to admit the application of the maxim *sic utere tuo, ut alienum non lœdas;* and neither party ought to be permitted so to occupy the basin or use this common right in

ALBANY,
Jan. 1835.

Beach
v.
Child.

front of his own lot as permanently to do injury to the rights of the others. So far, and for this purpose, there is a species of severance of the common right, and of its enjoyment. Under this maxim, the remedy on the case would be appropriate, if the injury was established, and is the only one at law to which the plaintiff can resort. Carroll owning the fee, and being tenant in common with the defendant, might also, perhaps, have sustained an action of ejectment upon the ground of an actual ouster from the possession, 2 *Selw.* 517, *n.*, 1 *Wendell*, 52, resting upon the remedy incident to his principal interest or fee.

It does not appear to be denied but that the original proprietors would have been entitled to the right now claimed by the plaintiffs as against each other; but it is supposed that the plaintiffs have not been invested with such right. The argument is, that the basin was a separate and distinct piece of property, held in common by them, except the east bank or wharf, which was divided and held in severalty for specified objects ; that the plaintiffs by their deed only acquired a several portion of such wharf belonging to Carroll, without any interest or right in the basin, except to use it reasonably as a way of ingress, egress, and regress to and from such wharf. The soundness of the argument upon this view, must depend upon a construction of the deed to Kempshall of mill site No. 7. We have before expressed our opinion of the true construction of that deed, and will only add, that it in terms conveys to him " the same privilege of wharfage, of loading and unloading boats on said thirty-five feet, (the width of the lot) that the said Charles is entitled to by said deed, (meaning the partition deed ;) the said Kempshall not to bear any part of the expense of making the basin, but to be at the same expense of keeping it in repair that the said Charles would have been liable to for said mill site." It is true that the plaintiffs are only entitled to the use of the basin, as an easement in going to and from their mill lot, and for the purpose of loading and unloading their boats, but they are also entitled to the enjoyment of these privileges to the fullest extent, and in the most ample manner that belonged to their grantors. They have paid for these privileges, and are perpetually subject to the

expense of repairs in the proportion this lot bears to the others. The deed being the act of Carroll, should, upon well settled principles, if there be any obscurity in its terms, be construed most strongly against him, and liberally and beneficially for the grantee.   Being himself a tenant in common in the basin, and having built it in part for the accommodation of the, mill lots, he would, beyond all doubt, have been entitled to use it, and would have used it in the most practicable and convenient manner for the purposes specified, having a due regard to the rights of his co-tenants ; and they, in turn would have been entitled to a reciprocal enjoyment.  Such a use the plaintiffs have bought.  That the pier of the defendant is a permanent obstruction and impediment to the use of the basin, both in loading and unloading boats at the plaintiff's wharf, and in departing from such wharf, is admitted. It excludes them from the water in front of the defendant's lot, to the extent of 12 feet from the wharf, at all times, *whether used by him or not,* and is virtually an exclusive appropriation of that part of the basin.   If the defendant can thus obstruct or embarrass this use, the other co-tenants, if owners of the lots, can do the same ; and had they done so, it would necessarily have created a very serious inconvenience to all parties.   The assignees of the lots possessing like privileges with the plaintiffs, may also erect a pier ; for if the pier of the plaintiffs is a convenience to the operations connected with the mill lots, they have the same right to build one ; and if a detriment to demolish it.   In regard to this use of the basin, the rights of the mill owners, as contradistinguished from those of the original proprietors, are paramount; they were granted out of the original rights, and must be first satisfied.  Proprietors, as owners of the mill sites, have, of course, concurrent rights and privileges.

It was said, on the argument, that as the original proprietors in their division of the mill sites possessed a width equal to the length of a canal boat, the inconvenience complained of could not have existed to them, and it was inferred that this view probably entered into their consideration in the division.  The facts abundantly refute this argument—each mill site, according to the division, measuring but thirty-one feet, besides

two feet on each side for air and light.  Though the aggregate of lots happened to exceed the length of a canal boat, it was not the design of the proprietors thus to sell or occupy them, as is obvious from the size of the lots, *each* of which is specially provided for as to water, common way, warehouse, &c.  It may be added, that the basin being made for the purpose, as is obvious, of admitting canal boats to the mill lots, the convenient use of them may be considered as having been especially provided for, and affords additional strength and weight to the views of the plaintiffs.  There is no pretence for saying they should cut their boats down to the size of the mill lot, or suffer the inconvenience imposed upon them.

It was also said that all the owners of lots adjoining the basin had the same rights which belonged to the plaintiffs, and that they did not pretend to make the claims which were made by the plaintiffs.  Whether this be so or not, we cannot say ;  and whether they have the same rights as the plaintiffs, must depend upon their deeds.  We put the right of the plaintiffs upon *express grant,* and any other person showing a similar conveyance, would of course be entitled to the same privileges.

From the foregoing principles discussed and applied to the special verdict, and in pursuance of its directions, it necessarily follows that the plaintiffs are entitled to the judgment for $1, for obstructing the passage to and from their wharf ; and also to judgment for the $100, for preventing them, by means of the same obstruction, from laying their boats in front of the defendant's wharf, for the purpose of loading and unloading, *when not in the use of himself or some other common owner.*  The judgment of the $100 follows from the principle of law arising from the estate in common in the basin, and the qualification derived from the construction of the deed of partition, that each proprietor of the mill site must so use this common right as not substantially to injure his neighbor.  When the basin in front of the wharf of one of the parties is not in the appropriate use of the owners of the wharf, the right to occupy it is then free, and may be enjoyed by either of the other parties, in the same manner as he may use the basin in front of his own lot.

Judgment for plaintiffs.